UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DARNEL POWELL BEY,

                  Plaintiff,                        **MEMORANDUM AND ORDER**

           v.                            21-CV-2048 (RPK) (PK)

WESTBURY UNION FREE SCHOOL DISTRICT;
EUDES S. BUDHAI, *Superintendent of Schools*;
FLOYD EWING, *Westbury Union Free School
District Board of Trustee*; PLESS DICKERSON,
*Westbury Union Free School Board of
Trustee from 2009 to 2021 excluding Stanton
Brown and Robin Bolling*; LISA MALDONADO;
ANN ALEXANDER; MICHAEL BURGER ET AL,

                  Defendants.
-----------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       This is the third case that *pro se* plaintiff Darnel Powell Bey has brought alleging that he

was unlawfully fired from his job as a middle school principal. *See Powell v. Westbury Union

Free Sch. Dist.*, No. 12-CV-1179 (JS) (AKT); *Powell v. N.Y. State Dep't of Educ.*, No. 18-CV-

7022 (RPK) (PK). In this action, plaintiff brings claims under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C.

§ 12101 *et seq.* (the "ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et.

seq.* (the "ADEA"), 42 U.S.C. §§ 1981, 1985(3), and 14141, the federal Constitution, various

treaties, and state law. *See* Compl. (Dkt. #1). Defendants have moved to dismiss the complaint.

*See* Defs.' Mem. in Supp. of Mot. to Dismiss (Dkt. #21) ("Mot. to Dismiss"). Defendants have

also filed a motion for summary judgment arguing that plaintiff's claims are time-barred. *See*

Defs.' Mem. in Supp. of Mot. for Summ. J. (Dkt. #46) ("Mot. for Summ. J."). For the reasons

stated below, defendants' motions to dismiss and for summary judgment are granted in part and plaintiff's other claims are dismissed as abandoned.

## BACKGROUND

### I.        Factual Background

The following facts are taken from defendants' Rule 56.1 statement and relevant portions of the record and are undisputed unless otherwise noted.

During the 2008-2009 school year, plaintiff was employed as a middle school principal by defendant Westbury Union Free School District (the "District").  *See* Defs.' Rule 56.1 Statement ¶¶ 1, 9 (Dkt. #48).  That year, defendants Lisa Maldonado and Ann Alexander accused plaintiff of sexual harassment.  *Id.* ¶ 9.  The District appointed an independent investigator to look into the allegations.  *See id.* ¶ 10.  In June 2009, the District brought disciplinary charges against plaintiff under New York Education Law § 3020-a.  *See* Defs.' Rule 56.1 Statement ¶ 10. That statute provides for the adjudication of disciplinary charges against tenured school employees.  *See* N.Y. Educ. Law § 3020-a.

In January 2010, an arbitrator held a Section 3020-a hearing to adjudicate the disciplinary charges against plaintiff.  Defs.' Rule 56.1 Statement ¶ 11.  The arbitrator found plaintiff guilty of misconduct.  *Id.* ¶ 14.  The District terminated plaintiff's employment in August 2010.  *Id.* ¶ 15.

After the arbitrator found plaintiff guilty of misconduct, the New York State Commissioner of Education (the "Commissioner") issued a "Notice of Substantial Question of Moral Character" pursuant to Part 83 of the State's education regulations, 8 N.Y.C.R.R. § 83.1 *et seq.*  Defs.' Rule 56.1 Statement ¶ 29.  That regulation provides for "a hearing before an administrative panel to determine whether a claim of misconduct against a teaching license-holder raises a reasonable question of moral character."  *Mudge v. Zugalla*, 939 F.3d 72, 75 (2d

2

Cir. 2019).  The purpose of a Part 83 hearing is to determine "whether the individual's [teaching] certification should be revoked or suspended or whether another penalty should be imposed."  8 N.Y.C.R.R. § 83.4(a).

Plaintiff's Part 83 hearing was held on July 26, 2012.  Defs.' Rule 56.1 Statement ¶ 30. Plaintiff suggests without citation to the record that this hearing occurred in 2011.  *See* Pl.'s Resp. to Defs.' Rule 56.1 Statement 2 (Dkt. #53).  The hearing officer found that plaintiff had engaged in inappropriate conduct.  Defs.' Rule 56.1 Statement ¶ 31.  The Commissioner then revoked plaintiff's teaching license in 2013.  *Id.* ¶ 32.

After plaintiff challenged the Commissioner's decision, the State Education Department remanded the case for a new Part 83 hearing.  *Id.* ¶¶ 33-34.  The Commissioner upheld the decision to revoke plaintiff's license on February 24, 2017.  *Id.* ¶ 35.

## II.    Procedural Background

Plaintiff filed a complaint in federal court on April 14, 2021, bringing claims under federal and state law and numerous treaties.  *See* Compl.  He names as defendants the District, Maldonado, Alexander, Eudes S. Budhai, Floyd Ewing, Pless Dickerson, and Michael Burger.

Plaintiff claims that he was deprived of his substantive and procedural due process rights in the Section 3020-a and Part 83 hearings.  Plaintiff alleges that the federal Constitution, the Treaty of Peace and Friendship of 1787, and the 1836 Treaty of Peace between Morocco and the United States provide him with a cause of action for his due process claims.  *See id.* at 26, ¶¶ 104-11.

Plaintiff also claims that the proceedings violated his treaty rights.  *See, e.g.*, *id.* ¶ 108. The complaint and plaintiff's other submissions reference the Jay Treaty, the Treaty of Peace and Friendship of 1787, the 1856 Treaty of Paris, the 1836 Treaty of Peace between Morocco and the United States, the "United Nations Declaration of Rights [f]or Indigenous Peoples 2010," the

"Treaties-Act of Algiers 1906," and the Vienna Convention on Diplomatic Relations ("VCDR"). *Id.* at 1-2, ¶ 11; Pl.'s Letter dated June 1, 2021 at 1 (Dkt. #18); Pl.'s Reply at 2 (Dkt. #35). In light of those treaties, plaintiff challenges the District's jurisdiction over him. *See, e.g.*, Compl. ¶ 108.

In addition, plaintiff claims that defendants violated 42 U.S.C. § 14141 by preventing plaintiff from submitting the results of a polygraph test. *See id.* ¶ 109. Plaintiff also claims that defendants acted unlawfully by "accepting[ing] hearsay . . . without conducting their own investigation" in violation of the fruit of the poisonous tree doctrine. *Id.* ¶ 110.

Plaintiff brings claims for wrongful termination under Title VII, the ADEA, and the ADA. *See id.* ¶¶ 14-16.

Plaintiff also alleges that he was terminated in retaliation "for exposing . . . elementary [school] teachers [who] provid[ed] students with the answers to [statewide] examinations." *Id.* ¶ 17. Those allegations could be construed as a First Amendment retaliation claim.

In addition, plaintiff claims that the termination of his employment "was a [b]reach of [c]ontract," *id.* ¶ 18, and that certain defendants defamed him, s*ee id.* ¶¶ 42, 120; Pl.'s Letter dated June 24, 2021 at 2 (Dkt. #23).

Finally, the complaint references 42 U.S.C. §§ 1981 and 1985(3). Compl. ¶ 10.

Plaintiff requests damages, an apology from the District, and fees and costs. *Id.* ¶¶ 113-19. Plaintiff also seeks "to return to [his] position as Westbury Middle School Principal." Pl.'s Letter dated June 1, 2021 at 4.

Defendants filed a motion to dismiss the complaint. *See* Mot. to Dismiss. Among the grounds for dismissal raised in the motion, defendants argued that many of plaintiff's claims are time-barred. *See id.* at 9-12. At a telephone conference on December 20, 2021, the Court set a

schedule for defendants to convert their motion to dismiss with respect to their statutes of limitations defenses into a motion for summary judgment. *See* Minute Entry & Order dated Dec. 20, 2021. Defendants subsequently filed a motion for summary judgment. *See* Mot. for Summ. J.

On January 25, 2022, the Court advised plaintiff that the Court was prepared to *sua sponte* dismiss plaintiff's Section 14141 claim, plaintiff's claim under the doctrine of the fruit of the poisonous tree, and plaintiff's treaty claims under the United Nations Declaration on the Rights of Indigenous Peoples, the General Act of the International Conference at Algeciras, and the VCDR. *See* Order dated Jan. 25, 2022. In addition, the Order stated that the Court was prepared to *sua sponte* grant summary judgment to defendants on plaintiff's Section 1985(3) claim. *See ibid.* The Court gave plaintiff an opportunity to file a responsive memorandum. *See ibid.* Plaintiff then submitted a filing styled as an "Application for Order 23 Rule 1(1) of the CPC." Pl.'s Application for Order 23 Rule 1(1) of the CPC (Dkt. #58) ("Pl.'s Application"). The filing indicated that plaintiff intended to abandon his Section 14141, fruit of the poisonous tree, United Nations Declaration, Algeciras, VCDR, and Section 1985(3) claims. *See ibid.*

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at

558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion, the court "must take all facts alleged in the complaint as true." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). "But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and alteration omitted) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence

that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A).  I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alteration, and citation omitted).

When a plaintiff is proceeding *pro se*, the complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted).  Moreover, if a "liberal reading of the complaint gives any indication that a valid claim might be stated," the plaintiff should be given an opportunity to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d. Cir. 1999) (per curiam)); *see Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).

## DISCUSSION

As explained below, the Court grants defendants' motion to dismiss plaintiff's claims for breach of contract and defamation against certain defendants and plaintiff's claims under the Jay

Treaty, the 1787 Treaty of Peace and Friendship between Morocco and the United States, the 1836 Treaty of Peace between Morocco and the United States, and the 1856 Treaty of Paris. Plaintiff has abandoned any claims under the United Nations Declaration on the Rights of Indigenous Peoples, the 1906 General Act of the International Conference at Algeciras, and the VCDR, as well as his claims under Section 14141, Section 1985(3), and the doctrine of the fruit of the poisonous tree.  *See* Pl.'s Application.  To the extent that plaintiff's pleadings can be construed to have raised such claims, those claims are accordingly dismissed.  *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "parties are always free to abandon some of [their claims]").  Summary judgment is granted on the plaintiff's remaining claims, which consist of claims under (i) Section 1981, (ii) Section 1983, (iii) Title VII, (iv) the ADEA, and (v) the ADA, as well as (vi) a state-law claim for defamation against defendant Burger and (vii) breach-of-contract claims against several defendants.

## I.        State-Law Claims

Plaintiff's state-law claims for breach of contract against the District, Budhai, Ewing, and Dickerson are dismissed for lack of subject matter jurisdiction.  So is plaintiff's defamation claim against all defendants except Burger.  Defendants are entitled to summary judgment on plaintiff's remaining defamation and breach-of-contract claims because they are time-barred.

### A.        Subject Matter Jurisdiction

Defendants' motion to dismiss plaintiff's breach-of-contract and defamation for lack of subject-matter jurisdiction is granted in part.  I construe those claims as arising under New York law because they are state-law claims and plaintiff identifies no other source of law that would govern them.

Applying New York law, the Court lacks subject-matter jurisdiction over plaintiff's breach-of-contract claim against the District, Budhai, Ewing, and Dickerson because plaintiff

does not allege that he gave notice of his breach-of-contract claim as required by New York Education Law § 3813(1).  Under that provision, "[n]o action[] for any cause . . . involving the rights or interests of any district . . . shall be prosecuted . . . against any school district . . . or any officer of a school district . . . unless it shall appear . . . as an allegation in the complaint . . . that a written verified claim upon which such action . . . is founded was presented to the governing body of said district . . . . within three months after the accrual of such claim."  N.Y. Educ. L. § 3813(1); *see Carlson v. Geneva Cty. Sch. Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010).  Budhai, who is named in the complaint as a superintendent, and Ewing and Dickerson, who are identified as trustees, are officers covered by Section 3813(a).  *See* N.Y. Educ. L. § 2(13) (defining school officers to include "trustee[s]" and "superintendent[s]"); *Carlson*, 679 F. Supp. 2d at 367.  And the notice requirement in Section 3813(1) applies to contract claims like plaintiff's.  *See Courtemanche v. Enlarged Cty. Sch. Dist. of Cty. of Middletown*, 686 F. Supp. 1025, 1032 (S.D.N.Y. 1988); *Bacchus v. N.Y.C.. Dep't of Educ.*, 137 F. Supp. 3d 214, 235 (E.D.N.Y. 2015).  Section 3813(1)'s notice requirement is jurisdictional, *see Carlson*, 679 F. Supp. 2d at 364, and so plaintiff's failure to allege proper notice warrants dismissal of his breach of contract claim against the District, Budhai, Ewing, and Dickerson.

Defendants' motion to dismiss the breach-of-contract claim against Alexander, Maldonado, and Burger for lack of subject-matter jurisdiction is denied because those defendants are not officers within the meaning of Section 3813(1).  Teachers like Alexander and Maldonado are generally not officers.  *See Carlson*, 679 F. Supp. 2d at 367 (concluding that principals are not officers and noting in dicta that teachers are not covered by Section 3813(1), either); *Collins v. City of New York*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) (holding that principals are not officers).  And defendants have not suggested that Alexander and Maldonado are "elective or

appointive officer[s] . . . whose duties generally relate to the administration of affairs connected with the public school system," aside from their positions as teachers.  N.Y. Educ. Law § 2(13).  Similarly, Burger's position as an officer of the teachers' union does not make him an "officer *of a school district*." *Id.* § 3813(1) (emphasis added); *see* Compl. ¶¶ 14, 42; Defs.' Rule 56.1 Statement ¶ 8 (citing plaintiff's complaint); *cf. Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 24 (E.D.N.Y. 2006) (explaining that labor representatives such as an officer of a teachers' union "are generally not considered state actors" under Section 1983).  Defendants do not offer any specific reason why Burger should be considered a school officer.  Accordingly, defendants' motion to dismiss the claim for breach of contract against Alexander, Maldonado, and Burger for lack of subject-matter jurisdiction is denied.

The Court also lacks subject-matter jurisdiction over plaintiff's defamation claims against all defendants except Burger because of plaintiff's failure to allege a proper notice of claim.  Under New York law, plaintiffs who bring defamation or other tort claims against a school, school district officers, "or any teacher or member of the supervisory or administrative staff or employee" must generally file a notice of claim.  N.Y. Educ. L. § 3813(2); *see Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001) (noting that defamation is a tort).  That requirement is jurisdictional.  *Carlson*, 679 F. Supp. 2d at 364.  The notice-of-claim requirement requires dismissal of the defamation claim against all defendants other than Burger—a school district, school district officers, and teachers.  But Burger is described by the parties as a teacher's union president, *see* Compl. ¶¶ 14, 42; Defs.' Rule 56.1 Statement ¶ 8 (citing plaintiff's complaint)—not a "teacher or member of the supervisory or administrative staff or employee" of a school, N.Y. Educ. L. § 3813(2).  Accordingly, defendants' motion to dismiss based on the notice-of-claim requirement is denied as to Burger.

### B.     Statute of Limitations

Defendants are entitled to summary judgment on plaintiff's remaining state-law claims because they are time-barred.

First, plaintiff's defamation claim against Burger was brought beyond the one-year statute of limitations governing such claims.  Under New York law, the a one-year statute of limitations for defamation claims typically "begins to run at the time of the first publication," or "the earliest date on which the work was placed on sale or became generally available to the public."  *Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003)); *see* N.Y. C.P.L.R. § 215(3).  Plaintiff has not specified what defamatory materials Burger published, but he suggests Burger engaged in a defamatory campaign against him prior to the appointment of the independent investigator in 2009.  *See* Compl. ¶¶ 42-43; *see also* Defs.' Rule 56.1 Statement ¶ 10 (describing appointment of independent investigator in June 2009). Regardless, the latest possible relevant date of publication raised in the complaint is the 2017 license revocation decision.  Accordingly, the one-year statute of limitations had long passed by the time plaintiff filed this lawsuit.  If plaintiff had filed a proper notice of claim with respect to his defamation claims, the additional defendants that plaintiff has sued for defamation would be entitled to summary judgment on the same basis.

Second, those of plaintiff's breach-of-contract claims that are not barred by the notice-of-claim requirement are time-barred.  In New York, a six-year statute of limitations applies to breach-of-contract claims.  N.Y. C.P.L.R. § 213(2).  That limitations period ordinarily "begins to run upon breach."  *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007).  The alleged breach of contract here, plaintiff's termination, happened in 2010.  *See* Defs.' Rule 56.1 Statement ¶ 15. Accordingly, plaintiff's time to bring suit for his breach-of-contract claim against Burger,

11

Alexander, and Maldonado expired in 2016. And even if this Court has jurisdiction over breach of contract claims against the District and school officer defendants, a one-year limitations period controls. *See* N.Y. Educ. L. § 3813(2-b) (setting a one-year limitations period for non-tort claims against school districts and officers). Accordingly, defendants are entitled to summary judgment on breach-of-contract claims over which this Court has jurisdiction.

## II.    Treaty Claims

Plaintiff's treaty claims, *see* Compl. 1-2, ¶ 11; Pl.'s Letter dated June 1, 2021 at 1; Pl.'s Reply at 2, are dismissed for failure to state a claim. Plaintiff asserts, based on several treaties, that the District lacked jurisdiction over him because he is a "Moor" and "Moroccan." Compl. 2. Specifically, he suggests that the Westbury School Board improperly functioned as a "[c]onsular [c]ourt" under the 1836 Treaty of Peace between Morocco and the United States. *Ibid.* Plaintiff also asserts that Articles III and VI of the federal Constitution "clearly state[] [that] treaties [do] not give the [United States] rights/jurisdiction over the Moors in a civil or criminal case," *ibid.*; *see* Pl.'s Resp. to Summ. J. 1-2 (Dkt. #52), and that the United States relinquished consular jurisdiction in Morocco in 1956, *see id.* at 5.

That legal theory is meritless. *See* Mot. to Dismiss at 8. Even though plaintiff claims to be a "Moroccan-Moor" and a non-citizen, *see* Pl.'s Letter dated June 24, 2021 at 3, he was still subject to the laws of New York during the time that he resided in and was employed by the state. *See, e.g., Bey v. Jamaica Realty*, No. 12-CV-1241 (ENV), 2012 WL 1634161, at *1 n.1 (E.D.N.Y. May 9, 2012); *Gordon v. Deutsche Bank Nat'l Tr. Co.*, No. 11-CV-5090 (WFK), 2011 WL 5325399, at *1 n.1 (E.D.N.Y. Nov. 3, 2011); *Bey v. Bailey*, No. 09-CV-8416, 2010 WL 1531172, at *4 (S.D.N.Y. Apr. 15, 2010); *El-Bey v. North Carolina*, No. 11-CV-423 (FL), 2012 WL 368374, at *2 (E.D.N.C. Jan. 9, 2012), *report and recommendation adopted by* 2012 WL

368369 (E.D.N.C. Feb. 3, 2012). Therefore, plaintiff's treaty claims relating to the District's jurisdiction is dismissed.

Plaintiff's additional claims invoking treatises are also dismissed for failure to state a claim. While plaintiff invokes numerous treaties, he does not explain how those treaties are implicated by the facts he has alleged and has pointed to no language in those treaties that guarantees him relevant rights enforceable in this Court.[*] "Apparently, [p]laintiff ascribes to the ethnic/religious Moorish movement, which . . . give[s] special import to treaties between the United States and Morocco." *El v. O'Brien*, No. 12-CV-1793 (DLI) (JMA), 2012 WL 2367096, at *3 (E.D.N.Y. June 20, 2012). But "[a]ny claims or arguments raised by [p]laintiff which are based on his membership in the Moorish American Nation are . . . frivolous." *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 272-73 (D.N.J. 2011); *Johnson El v. Bird*, No. 19-CV-5102 (CS), 2020 WL 5124920, at *4 (S.D.N.Y. Aug. 31, 2020) (finding claims asserted under "Treaty with Morocco[] 1787" to be frivolous). Defendants' motion to dismiss plaintiff's treaty claims is therefore granted.

---

[*] To the extent that plaintiff intends to raise a new claim based on the "Convention of Madrid 1880" or "Public Law 856" in his response to defendants' motion for summary judgment, Pl.'s Resp. to Summ. J. 2, "it is well settled that a *pro se* litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment," *Liverpool v. Davis*, 442 F. Supp. 3d 714, 736 (S.D.N.Y. 2020) (internal alterations and citation omitted). Even if I were to consider those claims, neither the Treaty of Madrid of 1880 nor Public Law 856 appear relevant to the facts of this case. *See* Joint Resolution Approving the Relinquishments of the Consular Jurisdiction of the United States in Morocco, Pub. L. No. 856, 70 Stat. 773 (1956); *Reid v. Covert*, 354 U.S. 1, 62 n.9 (1957) (Frankfurter, J., concurring in the judgment) (explaining that Public Law 856 "provid[es] for the relinquishment by the President, at such time as he deemed appropriate, of the consular jurisdiction of the United States in Morocco"); Convention Between the United States of America, Germany, Austria, Belgium, Denmark, Spain, France, Great Britain, Italy, Morocco, the Netherlands, Portugal, and Sweden and Norway, for the Establishment of the Right of Protection in Morocco, July 3, 1880, 22 Stat. 817.

Likewise, any claim plaintiff asserts under 18 U.S.C. § 242 in his opposition to defendants' summary judgment motion is not properly before the Court. *See* Pl.'s Resp. to Summ. J. 4. And in any event, no cause of action exists under that criminal statute. *Hariprasad v. Master Holdings Inc.*, 788 F. App'x 783, 786 (2d Cir. 2019) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979)); *see Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (Section 242 "do[es] not provide [a] private cause[] of action").

**III.      Motion for Summary Judgment**

Defendants' motion for summary judgment on plaintiff's claims under Section 1981, Section 1983, Title VII, the ADEA, and the ADA is granted.

**A.      Constitutional Claims**

Plaintiff's constitutional claims are barred by the three-year statute of limitations that applies to Section 1983 claims.

**1.  Plaintiff's Claims Arise Under Section 1983**

Construed liberally, plaintiff's constitutional claims arise under Section 1983.

Plaintiff invokes various treaties as providing causes of action for his constitutional claims, but the treaties are inapposite. The United States is not a signatory to the Treaty of Paris of 1856 or the 1856 Treaty between Great Britain and Morocco, *see* Khalid Ben-Srhir, *Britain and Morocco During the Embassy of John Drummond Hay, 1845-1886* xv (Malcolm Williams & Gavin Waterson, trans., 2005) (describing 1856 bilateral treaty between Britain and Morocco); S. Andrew Scharfenberg, *Regulating Traffic Flow in the Turkish Straits: A Test for Modern International Law*, 10 Emory Int'l L. Rev. 333, 341 (1996) (explaining that Treaty of Paris of 1856 was signed by Great Britain, Austria, France, Prussia, Russia, Sardinia, and Turkey after Russia's defeat in the Crimean War), and plaintiff has not explained how either treaty relates to his allegations.

Moreover, neither the United Nations Declaration on the Rights of Indigenous Peoples nor the Treaties of Peace and Friendship of 1787 and 1836 give rise to any causes of action. *See Joyner-El v. Giammarella*, No. 9-CV-3731 (NRB), 2010 WL 1685957, at *3 n.4 (S.D.N.Y. Apr. 15, 2010) (finding that United Nations Declaration on the Rights of Indigenous Peoples does not create a federal cause of action); *Nietzsche v. Freedom Home Mortg. Corp.*, No. 18-CV-1930 (SI), 2019 WL 5057174, at *6 (D. Ore. Oct. 8, 2019) (same); *Dingle v. Baggett*, No. 19-CV-425

14

(D), 2020 WL 5245986, at *4 (E.D.N.C. July 31, 2020) (same), *objections to memorandum and recommendation overruled by* 2020 WL 5217393 (E.D.N.C. Sept. 1, 2020), *aff'd*, 860 F. App'x 41 (4th Cir. 2021); *Steele-El v. Valvoline Instant Oil Change*, No. 18-CV-12277, 2019 WL 4640348, at *5 (E.D. Mich. Sept. 24, 2019) (dismissing claims pursuant to "the Treaty of Peace and Friendship of 1787 and 1836 . . . because the Treaty of Peace and Friendship does not provide a private cause of action in a civil case" (internal quotation marks and citation omitted)); *Bey v. Qusim*, No. 19-CV-16349 (MAS) (DEA), 2020 WL 4364332, at *2 n.1 (D.N.J. July 29, 2020) (same).  The Treaties of Peace and Friendship "simply [have] no relevance to [p]laintiff's . . . rights" with respect to the revocation of a teaching certificate in the State of New York. *O'Brien*, 2012 WL 2367096, at *3 (collecting cases).

Although the Court has not been able to locate a "Treaties-Act of Algiers 1906," *see* Pl.'s Letter dated June 1, 2021 at 1, plaintiff may have intended to invoke the 1906 General Act of the International Conference at Algeciras ("Algeciras Convention"), *see* General Act of the International Conference at Algeciras, Apr. 7, 1906, 34 Stat. 2905.  No court appears to have addressed whether the Algeciras Convention is self-executing.  In any event, that treaty reformed Moroccan governance, regulated the Moroccan arms trade, and called for the creation of institutions like a police force, a state bank, and a customs committee.  *See* Algeciras Convention, arts. 1-12, 13-30, 31, 97.  Nothing in the treaty provides a cause of action for plaintiff to bring his constitutional claims relating to the revocation of his teaching license, and plaintiff has not identified a provision in the treaty that bears any relevance to this case.

Nor can plaintiff rely on the Jay Treaty.  Although the Jay Treaty was self-executing upon ratification, *see Akins v. United States*, 551 F.2d 1222, 1224-25 (C.C.P.A. 1977), that treaty does not provide plaintiff with a cause of action to bring his due process, Fifth, and Sixth

Amendment claims.  The Jay Treaty "was designed to discharge the unfulfilled promises of the 1783 Treaty of Peace" that followed the Revolutionary War, "which . . . had sought to protect the land and credit interests of British nationals in America."  Henry Paul Monaghan, *Article III and Supranational Judicial Review*, 107 Colum. L. Rev. 833, 852 (2007).  To achieve that end, the Jay Treaty created commissions to arbitrate claims by British subjects who had contracted debts before the end of the Revolutionary War and claims by American citizens concerning losses caused by British war activities.  *See* Treaty of Amity, Commerce, and Navigation, Between His Britannick Majesty and the United States of America, by their President, with the Advice and Consent of their Senate ("Jay Treaty"), arts. 6, 7, U.S.-U.K., Nov. 19, 1794, 8 Stat. 116; Monaghan, *Supranational Judicial Review*, at 852-54.  In addition, Article III of the Jay Treaty guaranteed free passage "to the Indians dwelling on either side of the . . . boundary line" between the United States and what is now Canada.  Jay Treaty, art. 3.  Section 289 of the Immigration and Naturalization Act, 8 U.S.C. § 1359, codifies Article III's guarantee of free passage by permitting "American Indians born in Canada to pass the borders of the United States."  8 U.S.C. § 1359; *see* Bryan Nickels, Note, *Native American Free Passage Rights Under the 1794 Jay Treaty: Survival Under United States Statutory Law and Canadian Common Law*, 24 B.C. Int'l & Comp. L. Rev. 313, 314 (2001).  Plaintiff's claims relate to the revocation of his teaching license, not passage over the Canadian border or losses that he sustained during the Revolutionary War.  Therefore, nothing in the Jay Treaty appears to provide a cause of action for plaintiff's constitutional claims, and plaintiff has identified no provision in the treaty that bears any relevance to this case.

Finally, the VCDR does not apply in this case.  Plaintiff argues that Article 38 of that treaty allows plaintiff to "[in]voke [his] treaty rights."  Pl.'s Reply 2; *see* Pl.'s Resp. to Summ. J.

4.  That provision concerns "diplomatic agent[s]" and "[o]ther members of the staff of the mission and private servants."  Vienna Convention on Diplomatic Relations, art. 38, Dec. 13, 1972, 23 U.S.T. 3227; *see also* 22 U.S.C. §§ 254a–254e (implementing the VCDR).  But plaintiff's self-identification as a Moor and job as a middle school principal do not make him a "diplomatic agent" or a staff member or servant of a diplomatic mission to whom the VCDR applies.  *Murakush Caliphate of Amexem Inc.*, 790 F. Supp. 2d at 272-73 (finding claims based on similar self-identification frivolous); *see also United States v. Lumumba*, 741 F.2d 12, 15 (2d Cir. 1984) (holding that a party cannot "unilaterally . . . assert diplomatic immunity" under the VCDR absent "recognition of another state's sovereignty by the Department of State").

Moreover, because Section 1983 "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law," *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983), plaintiff cannot bring his constitutional claims directly under the Constitution.  A plaintiff cannot bring claims "directly under the United States Constitution where a statutory vehicle for the assertion of such a claim exists."  *Alleyne v. N.Y. State Educ. Dep't*, 691 F. Supp. 2d 322, 335 n.10 (N.D.N.Y. 2010); *see Ighile v. Kingsboro ATC*, No. 16-CV-4294 (AMD) (JO), 2018 WL 1970737, at *1 n.4 (E.D.N.Y. Apr. 25, 2018) (collecting cases).  Since plaintiff alleges the deprivation of federally guaranteed rights under color of state law, *see, e.g.*, Compl. ¶¶ 104-11, Section 1983 provides plaintiff with a statutory vehicle for his constitutional claims.  Accordingly, plaintiff cannot bring those claims directly under the Constitution.

In short, plaintiff points to no viable cause of action other than Section 1983 to bring his constitutional claims.  I therefore construe those claims as arising under Section 1983.  *See Ighile*, 2018 WL 1970737, at *1 n.4.

### 2. Plaintiff's Section 1983 Claim Are Untimely

Plaintiff's Section 1983 claims are untimely.  In New York, the statute of limitations for claims under Section 1983 is three years from the date on which the claim accrued.  *See Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (citing *Shomo*, 579 F.3d at 181); *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015).  A Section 1983 claim generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citation omitted).  Applying that principle to a complaint of deprivation of property without due process, such a claim "accrues when the plaintiff knew or had reason to know of the property deprivation."  *Tripathy v. City of New York*, No. 20-CV-1646 (LLS), 2020 WL 1699997, at *2 (S.D.N.Y. Apr. 6, 2020) (citing *Sterngass v. Palisades Interstate Park Comm'n*, 260 F. App'x 395 (2d Cir. 2008) (summary order)).  A First Amendment retaliation claim "accrues at the time that the allegedly wrongful conduct took place."  *Turner v. Boyle*, 116 F. Supp. 3d 58, 84 (D. Conn. 2015) (citing *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015)).

Plaintiff's due process and First Amendment retaliation claims are time barred under these principles.  Plaintiff's claims that relate to his termination after the Section 3020-a hearing accrued in August 2010, when plaintiff was terminated.  Defs.' Rule 56.1 Statement ¶ 15; *see Ashley v. Eastchester Police Dep't*, No. 10-CV-7952 (VB), 2012 WL 234399, at *2 (S.D.N.Y. Jan. 6, 2012) (limitations period started running on due process claim at time of benefits denial); *Clavin v. County of Orange*, 38 F. Supp. 3d 391, 396 (S.D.N.Y. 2014) (limitations period started running on due process claim at time of license denial); *Storman v. Klein*, 395 F. App'x 790, 792 (2d Cir. 2010) (summary order) (upholding district court decision that due process claim accrued by date that plaintiff was aware of unsatisfactory performance rating); *see also Harvey v. Melville*, No. 18-CV-7043 (NSR), 2020 WL 5123410, at *4 (S.D.N.Y. Aug. 31, 2020) (declining

to toll Section 1983 limitations periods until "related state court proceedings have concluded"). Plaintiff's due process claims relating to the Part 83 hearings are similarly untimely, because they accrued on February 24, 2017, when the Commission upheld the revocation of plaintiff's license after the second Part 83 hearing, Defs.' Rule 56.1 Statement ¶ 35, and this lawsuit was not filed until more than three years later.

Plaintiff has not identified any reason that the limitations period should be tolled. Federal courts apply New York rules for tolling the statute of limitations for Section 1983 claims. *Bonilla v. City of New York*, No. 20-CV-1704 (RJD) (LB), 2020 WL 6637214, at *2 (E.D.N.Y. Nov. 12, 2020) (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483 (1980)); *Leon v. Murphy*, 988 F.2d 303, 310 (2d Cir. 1993). "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2008) (internal quotation marks and citation omitted). Plaintiff has not directly made any tolling argument, but in response to a res judicata argument raised by defendants, he states that he "retract[s]" the stipulation of dismissal with prejudice of a lawsuit he filed against the District in 2012 alleging that his termination violated his equal protection rights. Pl.'s Letter dated June 19, 2021 at 1 (Dkt. #29); *see* Defs.' Rule 56.1 Statement ¶¶ 25, 28 (describing course of that lawsuit). And plaintiff argues that his lawyer in the 2012 action stipulated to dismissal without plaintiff's "consent and authority." Pl.'s Letter dated June 19, 2021 at 1.

Even if those assertions about the 2012 lawsuit could be construed as an argument for tolling or estoppel, plaintiff cannot "show[] that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have

ceased to be operational." *Dixon*, 480 F.3d at 642 (internal quotation marks and citation omitted). Plaintiff does not allege that he was ever unaware that the 2012 lawsuit had been dismissed, and plaintiff filed a suit against a different defendant bringing substantially similar claims as this action in 2018. *See Powell v. N.Y. State Dep't of Educ.*, No. 18-CV-7022 (RPK) (PK). Because plaintiff has failed to show that the circumstances surrounding the 2012 stipulation "prevented him from timely filing his complaint" in this action, plaintiff is not entitled to tolling. *Dixon*, 480 F.3d at 642.

Plaintiff also argues that "[s]tatute[s] of limitations [do] not apply when [a] treaty between nations is involved." Pl.'s Letter dated June 24, 2021 at 2; *see* Pl.'s Resp. to Summ. J. 3 (similar). But as I have explained, the treaties upon which plaintiff relies are not relevant to this case.

Finally, plaintiff argues that defendants failed to submit "documentary evidence . . . contradicting [his] claim" and "refuse[d] to submit the required documents to support their defense." Pl.'s Resp. to Notice to Pro Se Litigant 1 (Dkt. #54); *see* Pl.'s Resp. to Notice of Motion (Dkt. #55). But defendants did file sufficient evidence to support their statute of limitations arguments. *See* Decl. of Adam I. Kleinberg (Dkt. #45); Defs.' Rule 56.1 Statement ¶¶ 15, 35 (citing to plaintiff's complaints in this action and another action, as well an order dismissing plaintiff's complaint in a third action). And plaintiff has not offered any alternative dates that would bring his claims within the relevant statutes of limitations or any specific reason that defendants' evidence is inadequate. Nor does the third-party affidavit that plaintiff submitted in opposition to defendants' motion point to any later relevant date for the accrual of plaintiff's claims. *See* Aff. of Gloria E. Khan (Dkt. #56).

Since plaintiff's Section 1983 claims are barred by the statute of limitations, defendants' summary judgment motion is granted as to those claims.

### B. Title VII, ADEA, and ADA Claims

Plaintiff's claims under Title VII, the ADEA, and the ADA are also time-barred.

Claims under Title VII, the ADA, or the ADEA are untimely "if the plaintiff has not filed a complaint with the EEOC within 180 days of the alleged discriminatory or retaliatory act or filed a complaint with an appropriate state or local agency within 300 days of the occurrence of the alleged illegal act." *Cruz v. City of New York*, No. 21-CV-1999 (DLC), 2021 WL 5605139, at *4 (S.D.N.Y. Nov. 30, 2021) (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA); 29 U.S.C. § 626(d) (ADEA)); *see Tsekhanskaya v. City of New York*, No. 18-CV-7273 (KAM) (LB), 2020 WL 5802329, at *6 (E.D.N.Y. Sept. 29, 2020) (collecting cases) ("In order to assert claims of workplace discrimination under Title VII, the ADA, or the ADEA, a plaintiff must first exhaust her administrative remedies by filing a complaint with the Equal Employment Opportunity Commission within 300 days of the alleged misconduct."). Plaintiff does not allege or present any evidence that he filed administrative complaints with a relevant agency within the statutorily proscribed time period. Plaintiff's claims under Title VII, the ADA, and the ADEA are therefore time-barred.

Plaintiff is wrong that he is "not required to notify the EEOC about the . . . allegations against the defendant[s]," and that the Court has "no jurisdiction" with respect to "federal or state anti-discrimination statutes." Pl.'s Letter dated June 24, 2021 at 2. It is unclear how this Court could grant plaintiff relief under anti-discrimination statutes if this Court has no jurisdiction. Regardless, plaintiff's arguments appear to be based in the same reasoning as plaintiff's treaty claims, *see* Pl.'s Resp. to Summ. J. 2-3, and as I explained, the treaties cited by plaintiff have no relevance to this case.

For those reasons, plaintiff's Title VII, ADEA, and ADA claims are untimely and defendants' summary judgment motion is granted.

## C.   Section 1981 Claim

Plaintiff's claim under Section 1981 is also time-barred.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts[] . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).   That provision "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004); *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Section 1981 "does not provide a separate private right of action against state actors," *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).   Construing plaintiff's Section 1981 claims against the District as brought under Section 1983, plaintiff's claims fall outside the three-year limitations period as described above.

A four-year limitations period applies to plaintiff's Section 1981 claim against non-state actors because the claim relates to plaintiff's termination, which occurred after the formation of plaintiff's employment contract.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004).   However, plaintiff was terminated in August 2010.  Defs.' Rule 56.1 Statement ¶ 15. Even assuming that plaintiff's Section 1981 claim accrued when his license was finally revoked on February 24, 2017, *see id.* ¶ 35, plaintiff filed this action on April 14, 2021, outside the limitations period.   Defendants' summary judgment motion is therefore granted as to plaintiff's Section 1981 claims.

**CONCLUSION**

Plaintiff's state-law breach of contract claim against the District, Budhai, Ewing, and Dickerson is dismissed for lack of subject-matter jurisdiction.  Plaintiff's defamation claim as to all defendants except Burger is also dismissed on this ground.

Defendants' motion to dismiss plaintiff's claims under the Jay Treaty, the 1787 Treaty of Peace and Friendship between Morocco and the United States, the 1836 Treaty of Peace between Morocco and the United States, and the 1856 Treaty of Paris is granted.

Plaintiff's treaty claims under the United Nations Declaration on the Rights of Indigenous Peoples, the 1906 General Act of the International Conference at Algeciras, and the VCDR, as well as plaintiff's Section 14141, Section 1985(3), and fruit of the poisonous tree claims are dismissed as abandoned.

Summary judgment is granted to defendants on plaintiff's Section 1981, Section 1983, Title VII, ADEA, and ADA claims.  Summary judgment is also granted to defendants on those of plaintiff's state-law claims over which this Court has jurisdiction.

Because the defects in plaintiff's claims are "substantive" and cannot be cured with "better pleading," leave to amend the complaint is denied.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (leave to amend is futile where barriers to relief cannot be surmounted by reframing the complaint).

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: March 28, 2022
      Brooklyn, New York